**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**KENDRICK WILEY,**                                                    **PLAINTIFF**
**ADC #139566**

**V.**                          **CASE NO. 2:12CV00244 BSM/BD**

**JACKIE OXNER, et al.**                                        **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**      **Procedure for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Chief Judge Brian S. Miller. Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

**II.    Introduction:**

Plaintiff Kendrick Wiley, currently an inmate in the Arkansas Department of Correction ("ADC"), alleges that he was assaulted while he was detained in the Lee County Jail. He has sued Essie Clay, Lenny Larry and Tony Crowder ("ADC Defendants"), who were all employed by the ADC but assigned to work at the Lee County Jail, which is located next to the ADC East Arkansas Regional Unit. In addition, he has sued Jackie Oxner, Sheriff of Lee County, Arkansas. The ADC Defendants and Sheriff Oxner have separately moved for summary judgment. (Docket entries # 29 and # 32)

The following facts are not in dispute: Mr. Wiley was arrested in Monroe County on August 23, 2012, and was placed in the Monroe County Jail. A week later, due to a medical condition that required an infirmary, Mr. Wiley was transferred to the Lee County Jail. The Lee County Jail is located in the ADC's East Arkansas Regional Unit – Brickeys and is operated by the ADC. (#31-1 at pp. 4-5, #34-2, #34-3)

On November 21, 2012, officers Crowder and Larry were running barber and shower call. They escorted Mr. Wiley, who was housed in B-pod cell #11, to the barber for a hair cut. (#31-1 at p. 6) After having his hair cut, Mr. Wiley was seen by the nurse

and then escorted by Defendant Crowder back toward B-pod. (#31-1 at p. 6) As they approached the pod, Defendant Lenny passed Mr. Wiley a towel, some boxers, and some soap and told Mr. Wiley that he would be taking a shower in D-pod.

Defendant Crowder escorted Mr. Wiley to the shower in D-pod. Once Mr. Wiley was inside the shower, Defendant Crowder positioned himself at the top of the stairs. (#31-1 at p. 8) While Mr. Wiley was still in the shower, he heard heavy footsteps and commotion. Defendant Crowder observed two detainees racing up the stairs toward him. (#31-3) The detainees had manipulated the locks on their cell doors and were able to open their doors without staff assistance. (#31-3) The detainees pushed Defendant Crowder out of the way, entered the shower, and began assaulting Mr. Wiley in the shower with closed fists. (#31-3) Defendant Larry ran up the stairs to assist Defendant Crowder when a third detainee rushed in and also began assaulting Mr. Wiley. (#31-4) Eventually, Defendants Crowder and Lenny were able to stop the assault and call for back-up. (#31-4) Mr. Wiley was examined by medical personnel before leaving the shower area and then was escorted back to his cell. (#31-1 at p. 12)

Before this incident, Mr. Wiley had not had any problems with any of the detainees who assaulted him. (#31-1 at p. 11) None of the ADC Defendants knew of a problem between Mr. Wiley and these detainees prior to this incident. (#31-2, #31-6, #31-7)

In his response to the motions for summary judgment, Mr. Wiley states that on September 17, 2012, he wrote a grievance alleging that his life had been threatened

3

because safety and security officers were failing to perform "correct security rounds" and "check all doors and locks to make sure all detainees are secured in their cells." (#36 at p. 1) Further, he alleges that Defendant Larry was the officer he wrote the September 17th grievance about. (#36 at p. 1) Mr. Wiley complains that if officers had done their jobs and followed protocol, this incident would not have occurred. (#36 at p. 1) He also complains that Defendant Clay failed to investigate his grievance. (#36 at p. 1) Mr. Wiley has not attached a copy of the grievance to his response, but for purposes of considering the motions for summary judgment, the Court will assume that he did submit the grievance, as he describes.

### III. Discussion:

    A.    *Summary Judgment Standard*

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v.. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). When the nonmoving party cannot present

sufficient facts to establish a necessary element of the case, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 447 U.S. at 322-23, 106 S.Ct. at 2552.

      B.    *Sheriff Jackie Oxner's Motion*

Mr. Wiley has sued Sheriff Oxner in both his official and personal capacities, but at his deposition Mr. Wiley made it clear that he intended to sue Defendant Oxner in his official capacity only. (#34-1 at p. 11) Consequently, the Court will address only the official-capacity claim.

A suit against a county official in his or her official capacity is the same as a suit against the county. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). In *Monell v. New York Dep't. of Soc. Servs*., 436 U.S. 658, 694, 98 S.Ct. 2018 (1978), the Supreme Court held that local governments are not liable under § 1983 for injuries inflicted solely by their employees or agents. Instead, a county is liable for the acts of its employee only when the employee is carrying out a county policy or custom. *Id*.; *Jenkins v. County of Hennepin, Minn*., 557 F.3d 628, 632 (8th Cir. 2009). A "policy" is a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Marksmeier v. Davie*, 622 F.3d 896, 902 (8th Cir. 2010). To establish a custom, a plaintiff must prove the existence of a continuing pattern of unconstitutional misconduct, not a single act. *Id*. at 902–903.

In his complaint, Mr. Wiley references what he believes to be a policy of Lee County Jail and states that defendants did not follow that policy. He states, that "jail

5

administrator [Essie Clay] advised him that it would be two officers to escort one inmate at all times and B-pod detainees would shower in our own pod.  But for some strange reason that order was violated on this particular day (11-21-12)."  (#2 at p. 4)  Mr. Wiley suggests that the change to the location where he showered enabled the other detainees to attack him.

Here, it is undisputed that under the contract Lee County has with the ADC, Sheriff Oxner does not make or control any of the policies or procedures related to the custody of detainees at the Lee County Jail.  The ADC officials who make the policies that apply to Lee County detainees while held in the Lee County Jail are not Lee County employees.  (#34-2 at pp. 2-3)  Mr. Wiley has not provided any evidence that either Sheriff Oxner or the County had any hand in developing or implementing any of the policies or procedures he points to in his complaint or response.  Because Defendant Oxner did not implement, develop, or carry out a policy or custom of Lee County that caused injury to Mr. Wiley, he is entitled to summary judgment.

    C.    *ADC Defendants' Motion*

Mr. Wiley is also suing Defendants Crowder and Larry in their individual and official capacities and jail administrator Essie Clay in her official capacity only.  (#31-1 at p. 18)  In their motion for summary judgment, the ADC Defendants contend that Defendant Clay is entitled to sovereign immunity, and that Defendants Crowder and Larry are entitled to sovereign and qualified immunity.

1. Sovereign Immunity

Mr. Wiley's claims for money damages from the ADC Defendants in their official capacities are barred by sovereign immunity. A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). For that reason, the ADC Defendants should be granted summary judgment on Mr. Wiley's official capacity claims seeking money damages.

2. Qualified Immunity

ADC Officers Crowder and Larry claim they are entitled to qualified immunity on Mr. Wiley's claims against them in their individual capacities. "An official is entitled to qualified immunity unless the facts alleged establish a violation of a constitutional or statutory right, and that right was clearly established at the time of the violation." *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808 (2009)). Officers Crowder and Larry bear the burden of establishing the relevant facts supporting qualified immunity, while Mr. Wiley receives the benefit of all reasonable inferences. See *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010).

    a. *Violation of a Constitutional Right*

Defendants Crowder and Larry contend that Mr. Wiley has not established that their conduct violated his constitutional rights. A jail official violates the Due Process Clause of the Fourteenth Amendment, and may be liable under 42 U.S.C. § 1983, when

he is deliberately indifferent to a substantial risk of serious harm to a pre-trial detainee and fails to protect the detainee. See *Glaze*, 721 F.3d at 531 (citing *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007)).

A failure-to-protect claim has two elements. First, "the inmate must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994)). Second, the inmate must show that the official knew of and was deliberately indifferent to the risk to the inmate's safety. *Id*. (citing *Farmer*, 511 U.S. at 837).

Mr. Wiley complains that Officers Larry and Crowder did not follow Lee County Jail policies when they sent him to D-pod to shower, when they failed to lock the door to the shower, and when they failed to secure the detainees who assaulted him. Mr. Wiley has not produced evidence to support his claim that such policies existed. But even if these policies did exist, a claim of failure to follow policy or procedure, standing alone, falls short of stating a constitutional claim. See *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (no § 1983 liability for violation of prison policy).

In his deposition, Mr. Wiley testified that he had not had problems with any of the detainees who assaulted him prior to this incident. (#31-1 at p. 11) He admitted that he did not foresee that these detainees would attempt to harm him, and he had not alerted any of the ADC defendants to the possibility that such an attack might occur. (#31-1 at pp. 16-17) The detainees who assaulted Mr. Wiley were not on Mr. Wiley's "enemy alert

list," so Defendants Crowder and Larry had no prior warning that these detainees might assault Mr. Wiley. (#31-6, #31-7)

During the incident, Defendants Crowder and Larry intervened to stop the assault and called for back-up. After the incident, Mr. Wiley was immediately examined by medical personnel. When a failure-to-protect claim arises from a surprise attack like the attack at issue here, prison officials are entitled to qualified immunity. See *Schoelch v. Mitchell*, 625 F.3d 1041, 1047-48 (8th Cir. 2010); *Tucker v. Evans,* 276 F.3d 999, 1001-02 (8th Cir. 2002); *Curry v. Crist*, 226 F.3d 974, 978-79 (8th Cir. 2000);

In his response to the motion for summary judgment, Mr. Wiley complains that he filed a grievance with Defendant Clay that should have made her aware that officers were failing to properly perform security rounds. (#36 at p. 1) He also complains that Defendant Clay failed to investigate his grievance. (#36 at p. 1) Assuming that Mr. Wiley filed such a grievance, there is no evidence that Defendants Crowder and Larry were aware of the grievance. Moreover, it is too much of a stretch to assume that a grievance regarding security rounds, submitted two months before this incident, would have put officers Crowder and Larry on notice that this random attack in the prison shower would occur.

Defendants Crowder and Larry have established that they did not know that there was a risk that Mr. Wiley would be assaulted by other detainees, and that they did not act

with deliberate indifference to a known risk. Accordingly, they have establish qualified immunity on the first part of the analysis.

      b.    *Was the right clearly established?*

Defendants Crowder and Larry have also established that the right was not clearly established in the context of this case. *Scott v. Harris*, 550 U.S. 372, 377 (2007) (the second part of the qualified immunity inquiry requires the Court to ask whether the right was clearly established in light of the specific context of the case). In determining whether a right is clearly established, the Court must assess whether the officer has "fair warning" that his conduct would violate the alleged constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Here, it is undisputed that Defendants Crowder and Larry did not know of any animosity or ill will between Mr. Wiley and the detainees who assaulted him. Given that the attack was not foreseeable, Defendants Crowder and Larry could not have known that their conduct during this incident would violate Mr. Wiley's constitutional rights. Defendants Crowder and Larry are entitled to summary judgment on Mr. Wiley's claims against them personally based on qualified immunity.

    3.    Injunctive Relief

In his complaint, Mr. Wiley seeks "proper locks to secure doors and adequate safety and security to institution." (#2 at p. 6) Sovereign and qualified immunity do not bar Mr. Wiley from obtaining injunctive relief against the ADC Defendants. *Larson v.*

*Kempker*, 414 F.3d 936, 939 (8th Cir. 2005)(sovereign immunity does not bar plaintiff from obtaining injunctive relief against defendant in his official capacity); *Pearson v. Callahan*, 555 U.S. 223, 242 (2009) (qualified immunity applies only to a request for damages, not to injunctive relief). Within weeks of filing his complaint, however, Mr. Wiley was transferred from the Lee County Jail to the Phillips County Jail, and to the ADC's Varner Unit. (#5, #8, #21, #23) Mr. Wiley is no longer housed at the facility that his requested injunctive relief was targeted to improve, and therefore, his request for injunctive relief against the ADC Defendants is moot. See *Owens v. Isaac*, 487 F.3d 561, 564 (8th Cir. 2007) (a prisoner or detainee's claim for injunctive relief is moot if he is no longer subject to the allegedly unconstitutional condition or practice; improving prison conditions is moot when he is transferred to another facility and no longer subject to those conditions); *Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006) (same).

## IV.  Conclusion:

The Court recommends that Defendants Essie Clay, Tony Crowder, and Lenny Larry's motion for summary judgment (#29) be GRANTED, and that Mr. Wiley's claims against the ADC Defendants be DISMISSED with prejudice. The Court also recommends that Defendant Jackie Oxner's motion for summary judgment (#32) be GRANTED and that all claims against Mr. Oxner be dismissed with prejudice.

DATED this 28th day of August, 2013.

_____
UNITED STATES MAGISTRATE JUDGE